UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| YANG HONG,<br><br>      Petitioner,<br><br> v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>      Respondents. | Case No. 2:20-cv-1784-RAJ-TLF<br><br>AMENDED REPORT AND RECOMMENDATION<br><br>Noted for June 25, 2021 |

  Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action to obtain release or a bond hearing. Currently before the Court is the Government's habeas return and motion to dismiss. Dkt. 4. Petitioner filed a response (Dkt. 7) and the Government replied (Dkt. 10). The Court issued a Report and Recommendation ("R&R") recommending that both the petition and the Government's motion be granted in part and denied in part. Dkt. 11. After the R&R was issued, the parties submitted supplemental authority consisting of an order from the Board of Immigration Appeals ("BIA") dismissing Petitioner's appeal (Dkt. 15) and Petitioner's filing of a Petition for Review with the Ninth Circuit Court of Appeals

AMENDED REPORT AND RECOMMENDATION - 1

(Dkt. 16); at the request of District Court Judge Richard A. Jones, the parties also submitted a joint statement expressing their respective views of the impact of these developments (Dkt. 18). Having considered the parties' submissions, the balance of the record, the governing law, and the parties' supplemental authority, the Court continues to recommend that Petitioner's request for release be DENIED but that he be GRANTED a bond hearing.

## BACKGROUND

Petitioner is a native and citizen of China who entered the United States at the Seattle-Tacoma International Airport on August 8, 2019. Dkt. 6 at 1 ¶ 2. Upon his entry, Petitioner was referred to secondary inspection due to having an INTERPOL Red Notice affiliated with him from China. *Id*. During his secondary inspection, Petitioner claimed a fear of returning to China and requested asylum in the United States. *Id*. at ¶ 2. Petitioner was detained at the NWIPC and scheduled for a credible fear interview, which took place on August 21, 2019. *Id* at ¶ 3; Dkt. 5-2. The Asylum Officer determined that Petitioner had a credible fear of persecution in China. Dkt. 6 at ¶ 3; Dkt. 5-4. On August 26, 2019, the U.S. Department of Homeland Security ("DHS") filed a Notice to Appear with the immigration court, charging Petitioner with inadmissibility because he did not have a valid entry document at the time he applied for admission. Dkt. 5-4. Petitioner appeared through Counsel on September 17, 2019, admitted the allegations in the NTA, and filed an application for asylum. Dkt. 6 at ¶ 4.

Petitioner testified at a hearing on January 22, 2020 before an Immigration Judge ("IJ") to adjudicate his asylum claim. Dkt. 6 at ¶ 5. On March 25, 2020 the IJ denied Petitioner's claim for relief from removal and ordered him removed to China. Dkt. 5-5. Plaintiff appealed the denial to the Board of Immigration Appeals ("BIA") on April 17,

AMENDED REPORT AND RECOMMENDATION - 2

2020. Dkt. 5-6. Petitioner requested a bond hearing, but a scheduled hearing was cancelled by the IJ because Petitioner is an arriving alien who does not have a final order of removal. Dkts. 5-7, 5-8.

On December 4, 2020, Petitioner initiated the instant action seeking release from detention or a bond hearing. Dkt. 1. The Government filed a return and motion to dismiss, together with the Declarations of Bradley Kim and Matt Waldrop, arguing that Petitioner is not entitled to either form of relief. Dkts. 4, 5, 6. Petitioner filed a response to the return and the motion to dismiss (Dkt. 7) and the Government filed a reply (Dkt. 10).

On April 19, 2021, after this Court issued its original R&R, the BIA dismissed Petitioner's appeal of the IJ's removal order. Dkt. 51-1. On April 26, 2021, Petitioner filed a petition for review with the Ninth Circuit, as well as a motion to stay his removal; the Ninth Circuit has granted a temporary stay of removal while it considers the motion. Dkts. 16, 19; *Hong v. Garland*, No. 21-71010 (9th Cir.), Dkts. 9, 10.

## DISCUSSION

**A.    Statutory Basis for Petitioner's Detention**

Title 8 U.S.C. § 1225 applies to "applicants for admission"—noncitizens who "arrive[] in the United States," or are "present" in the United States but have "not been admitted."[1] 8 U.S.C. § 1225(a)(1). *See also Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830, 836–37 (2018). There are two categories of applicants for admission: (1) § 1225(b)(1) includes, among others, noncitizens initially determined to be inadmissible

---

[1] Applicants for admission are also referred to as "arriving" noncitizens. 8 C.F.R. § 1001.1 ("Arriving [noncitizen] means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or [a noncitizen] seeking transit through the United States at a port-of-entry[.]").

because of lack of valid documentation; and (2) § 1225(b)(2) "serves as a catchall provision that applies to all applications for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 138 S. Ct. at 837.

Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). But, when a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Noncitizens "covered by § 1225(b)(2) are detained pursuant to a different process." *Jennings*, 138 S. Ct. at 837. They "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the United States. *Id.* (quoting § 1225(b)(2)(A), alterations in *Jennings*). Under the statute, the only opportunity for applicants for admission to be released is on temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C.A. § 1182(d)(5)(A); *see also* 8 C.F.R. § 212.5(b), 235.3. The statute does not impose "any limit on the length of detention" pending a decision on the asylum application or removal proceedings and does not authorize bond hearings or release on bond. *Jennings*, 138 S. Ct. at 842-45.

Petitioner applied for admission to the United States but did not have a valid entry document, which subjects him to detention under § 1225(b)(1). Detention under

this section is mandatory. *Jennings*, 138 S. Ct. at 842-45; s*ee also Djelassi v. ICE Field Office Dir*., 434 F. Supp. 3d 917, 927–29 (W.D. Wash. 2020)*, appeal dismissed,* No. 20-35244, 2020 WL 5513355 (9th Cir. June 19, 2020). Thus, Petitioner is not statutorily entitled to a bond hearing.

**B.    Due Process**

Even if authorized under § 1225(b)(1), Petitioner's continued detention must comport with due process. The Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018); *see also Demore v. Kim,* 538 U.S. 510, 532 (2003) (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien ... could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). Judges in this district have held that "unreasonably prolonged detention under §1225(b) without a bond hearing violates due process." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019), *appeal dismissed sub nom. Banda v. U.S. Dep't of Homeland Sec.*, No. 19-35683, 2019 WL 5885047 (9th Cir. Oct. 9, 2019); *Djelassi*, 434 F. Supp. 3d at 923-24 (ordering bond hearing for § 1225(b) detainee whose detention without a bond hearing had become unreasonably prolonged).

To determine whether prolonged detention has become unreasonable, the Court will conduct a case-specific analysis of the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of

detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1106 (quoting *Jamal A v. Whitaker*, 358 F.Supp.3d 853, 858-59 (D. Minn. 2019)); *see also Djelassi*, 434 F. Supp. 3d at 920 (employing the *Banda* factors).

The Government asks the Court to apply the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), instead of the test adopted in *Banda* and *Djelassi*. (Dkt. 4 at 4–5.) "The *Mathews* test requires considering (1) the private interest affected, (2) the government's interest, and (3) the value added by additional or substitute procedural safeguards in the situation before the court." *Banda*, 385 F. Supp. 3d at 1106 (citing *Mathews*, 424 U.S. at 334). In *Banda*, the Honorable James L. Robart considered but declined to apply *Mathews*, explaining:

> Courts apply the *Mathews* test to resolve the question of "whether the administrative procedures provided . . . are constitutionally sufficient." 424 U.S. at 334. Thus, the *Mathews* test balances the benefits or burdens of "additional or substitute procedural safeguards." *Id.* at 335. It does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided. Therefore, Magistrate Judge Theiler correctly determined that the *Mathews* test is not "particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." (R&R at 19.)

*Id.* The Court agrees that the factors set forth in *Banda*, rather than the *Mathews* test, should apply here.

**C.    Petitioner is Entitled to a Bond Hearing Under *Banda***

The Government argues that, even applying the *Banda* factors, Petitioner is not entitled to a bond hearing. Dkt. 4 at 5–6. Petitioner contends that the factors support a hearing. Dkt. 7 at 2–5. As discussed below, the Court concludes that Petitioner's mandatory detention has become unreasonable and thus he is entitled to a bond

hearing.

The length of detention is "the most important factor." *Banda*, 385 F. Supp. 3d at 1118. Petitioner has been in detention for over 21 months, and this factor strongly favors granting him a bond hearing. *See id.* (granting bond hearing after 17 months' detention and collecting cases granting bond hearings after nine, 10, 16, and 19 months' detention).

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Id.* at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 859). When this Court initially issued its R&R, Petitioner's case was on appeal to the BIA, where it had been pending since April 2020 and had been fully briefed since July 2020. Dkt. 6 at 2; Dkt. 7 at 4. The BIA has since issued its ruling, dismissing Petitioner's appeal on April 19, 2021. Dkt. 15-1. But, as the Court noted in its original R&R, if Petitioner received an adverse ruling from the BIA, he would then have the opportunity to file a petition for review with the Ninth Circuit Court of Appeals. Petitioner filed his petition for review on April 26, 2021. Dkt. 16; *see also Hong v. Garland*, No. 21-71010 (9th Cir.), Dkt. 1.

The Government argues that the BIA's completion of its review should alter the Court's original evaluation of the second factor. Dkt. 18 at 2. The Court disagrees. While the length of Petitioner's administrative appeal (which spanned approximately one year) is now known, the process for deciding his petition for review has just begun. On average, appeals to the Ninth Circuit remain pending approximately 12–20 months before oral argument and three months to a year after oral argument before a decision.

U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions, www.ca9.uscourts.gov/content/faq.php (last visited 5/29/21). Thus, Petitioner could remain in custody an additional 15 to 38 months. In *Djelassi v. ICE Field Office Dir.*, 434 F. Supp. 3d 917 (W.D. Wash. 2020), the District Court rejected the Government's argument that the second factor did not weigh in petitioner's favor when oral argument in petitioner's pending Ninth Circuit petition for review proceeding was imminent; the court "found no error" in the Magistrate Judge's assessment that resolution of the case might reasonably take another year or longer. *Id*. at 922. Here, the petition for review proceeding is in its earliest stages and the likely period of additional detention is therefore even longer than in *Djelassi*. This factor favors Petitioner.

With respect to the third factor—conditions of the detention facility where Petitioner is detained—Petitioner argues that conditions at NWIPC put him at increased risk of contracting COVID-19 during the ongoing pandemic. Dkt. 7 at 8. Petitioner does not argue that he suffers from health conditions placing him at greater risk from the disease nor that there is a significant presence of infection at the facility. *See, e.g.*, *Moturi v. Asher*, No. C19-2023 RSM-BAT, 2020 WL 2084915, at *4–5 (W.D. Wash. Apr. 30, 2020) (finding that the petitioner failed to establish a likelihood of success on the merits of his punitive conditions of confinement claim because his medical history did not put him at risk for serious illness or death from COVID-19). The Court concludes that this factor is neutral.

The fourth factor the Court considers is the nature and extent of any delays in the removal proceedings caused by Petitioner. *See id*. at 1119-20. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot

undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *report and recommendation adopted,* No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoted source omitted) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.").[2] Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830; *see also Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated as moot,* 890 F.3d 952 (11th Cir. 2018) ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the [noncitizen].").

Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018), *as amended* (May 22, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). The record does not indicate Petitioner has acted in bad faith to slow his proceedings or abused the process provided to him.

---

[2] *Martinez* involved mandatory prolonged detention under 8 U.S.C. § 1226(c). Analysis of the fourth and fifth factors are the same for purposes of considering whether detention is unreasonably prolonged under § 1226(c) and § 1225(b)(1).

Accordingly, the Court concludes that this factor weighs in Petitioner's favor.

The fifth factor addresses the extent of delay attributable to the government. *Banda*, 385 F. Supp. 3d at 1119-20. "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . .. Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). There is no evidence the Government has engaged in deliberate delay tactics. Rather, most of the delay appears to have stemmed from the courts' crowded dockets.

The Government argues that, now that any docket congestion-related delay at the BIA has concluded, this factor should no longer favor Petitioner. Dkt. 18 at 2. But Petitioner remains subject to potentially lengthy delays in the decision on his petition for review. The important point is that these delays are not attributable to Petitioner. "Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable")); *Dukuray v. Decker*, No. 18 CV 2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner); *Djelassi*, 434 F. Supp. 3d at 931-32 (weighing past delay at the BIA and anticipated future delay at the Ninth Circuit in favor of petitioner). Therefore, the fifth factor also favors Petitioner.

AMENDED REPORT AND RECOMMENDATION - 10

The final factor involves consideration of "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal*, 358 F. Supp. 3d at 860). "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.* "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore v. Kim*, 538 U.S. 510 (2003)). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid v. Donelan*, 819 F.3d 486, 499-500 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018)).

Petitioner is seeking Ninth Circuit review of the IJ's denial of his application for asylum and related relief. The Court declines to make a prediction of the likelihood of Petitioner's success, yet the evidence of his good faith challenge leads the Court to conclude that this factor is at least neutral.

In sum, at least four of the six factors weigh in favor of granting Petitioner a bond hearing, and two factors are neutral. Accordingly, Petitioner's removal has become unreasonably prolonged and due process requires that he be granted a bond hearing that complies with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), including that the Government bear the burden of justifying continued detention by clear and convincing evidence. *See Banda*, 385 F. Supp. 3d at 1120-21; *Djelassi*, 434 F. Supp. 3d at 923-24; *Martinez*, 2019 WL 5968089, at *11.

### D.  Petitioner is Not Entitled to Release

Petitioner requests release. A noncitizen is entitled to release if he can show that his detention is indefinite within the meaning of the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062–63 (9th Cir. 2008) (applying *Zadvydas* to habeas petitioner who was subject to § 1226(a) detention). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his pending petition for review was unsuccessful. *Id.* Petitioner here does not present any evidence that ICE will not be able to remove him if he is ultimately ordered removed. Accordingly, Petitioner's removal is not indefinite, and he is not entitled to an order of release.

### CONCLUSION

The Court recommends that both the Government's motion to dismiss (Dkt. 4) and Petitioner's habeas petition (Dkt. 1) be GRANTED in part and DENIED in part. Specifically, the Court recommends that Petitioner's request for release be DENIED but the Court should order the Government to GRANT a bond hearing that complies with the procedural requirements of *Singh* within 30 days of any order adopting this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.) 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 25, 2021**, as noted in the caption.

Dated this 8th day of June, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

AMENDED REPORT AND RECOMMENDATION - 13