1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YANG HONG,

                  Petitioner,

     v.

ALEJANDRO MAYORKAS, et al.,

                Respondents.

CASE NO. 20-CV-01784-LK

ORDER ADOPTING AMENDED
REPORT AND
RECOMMENDATION

This matter comes before the Court on the Amended Report and Recommendation of United States Magistrate Judge Theresa L. Fricke and Respondents' Objections. Dkt. Nos. 20–21. Having reviewed these documents, the remaining record, and the governing law, the Court adopts the Amended Report and Recommendation, grants in part and denies in part Petitioner Yang Hong's habeas petition, grants in part and denies in part Respondents' motion to dismiss, and orders Respondents, within 30 days of the filing date of this Order, to provide Hong with an individualized bond hearing that complies with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

## I.   BACKGROUND AND PROCEDURAL HISTORY

Petitioner Yang Hong is a native and citizen of the People's Republic of China. Dkt. No. 6 at 1. He entered the United States at the Seattle-Tacoma International Airport on August 8, 2019. *Id.* During a "secondary inspection" at the airport, Customs and Border Protection officers determined that Interpol had flagged Hong with a Red Notice related to disorderly conduct in Hong Kong, China.[1] *Id.*; Dkt. No. 5-1 at 3. Hong disavowed any outstanding warrants as "falsified or wrong" and indicated that he intended to seek political asylum in the United States. Dkt. No. 5-1 at 3. According to Hong, the Chinese Communist Party was attempting to seize the assets of his business and had already arrested and tortured his wife. Dkt. No. 5-1 at 3. Immigration and Customs Enforcement ("ICE") assumed custody of Hong and transferred him to the Northwest ICE Processing Center in Tacoma, Washington. Dkt. No. 6 at 1.

The United States Citizenship and Immigration Services thereafter scheduled a "credible fear interview," where Hong reasserted his fear of returning to China due to government corruption, seizure of his business, threat of arrest and interrogation, and death. Dkt. No. 5-2 at 6–7, 9–10. *See* 8 U.S.C. 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30. Based on information obtained during this interview, the asylum officer determined that Hong presented a credible fear of persecution. Dkt. No. 6 at 1; Dkt. No. 5-4 at 2. *See* 8 U.S.C. § 1225(b)(1)(B)(i)–(ii); 8 C.F.R. § 208.30(f). The Department of Homeland Security ("DHS") then issued and served Hong with a Notice to Appear ("NTA"), charging him as a removable alien pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. Dkt. No. 6 at 2; Dkt. No. 5-4 at 2. *See* 8 U.S.C. § 1229(a)(1).

---

[1] The International Criminal Police Organization (commonly referred to as "Interpol") issues "Red Notices" for international fugitives. A Red Notice functions as a worldwide alert to law enforcement "to locate and provisionally arrest a person pending extradition, surrender, or similar legal action." *See* https://www.interpol.int/en/How-we-work/Notices/View-Red-Notices.

DHS formally initiated removal proceedings by filing the NTA with the Tacoma Immigration Court. Dkt. No. 6 at 2.

In September 2019, Hong appeared with counsel at an initial hearing, admitted the factual allegations in the NTA, and conceded the charge of removability. Dkt. No. 6 at 2; Dkt. No. 5-5 at 3. He then filed an application for asylum. Dkt. No. 6 at 2. The Immigration Judge ("IJ") held a hearing to adjudicate this claim in January 2020, but ultimately denied asylum, withholding of removal, and protection under the Convention Against Torture. Dkt. No. 5-5 at 24. The IJ found that the evidence "creates compelling reasons to question [Hong's] claim—and find, instead, that the Chinese government is seeking to *prosecute* [him] for legitimate reasons[.]" *Id.* at 23 (emphasis original); *see also Li v. Holder*, 559 F.3d 1096, 1108 (9th Cir. 2009) (courts have "long distinguished persecution from prosecution"). Moreover, Hong "failed to dispel that concern and bolster his testimony with reasonably available corroborative evidence[.]" Dkt. No. 5-5 at 23. The IJ accordingly ordered Hong removed to China. *Id.* at 24. Hong timely appealed this decision to the Board of Immigration Appeals ("BIA"). Dkt. No. 6 at 2; Dkt. No. 5-6 at 2.

Hong next moved the Immigration Court for a bond hearing in June 2020. Dkt. No. 5-7. The IJ denied the motion, reasoning that Hong "is an arriving alien and does not have a final order of removal[.]" Dkt. No. 5-8 at 2. Hong did not appeal this ruling. Dkt. No. 4 at 3. Six months later, in December 2020, Hong brought this habeas corpus action in federal district court seeking release from custody or, in the alternative, a bond hearing. Dkt. No. 1 at 10. *See* 28 U.S.C. § 2241. Hong argued that his prolonged detention was unreasonable and violated the Fifth Amendment's Due Process Clause. Dkt. No. 1 at 6–9. Respondents promptly moved to dismiss the petition. Dkt. No. 4.

In March 2021, Magistrate Judge Theresa Fricke recommended denying Hong's request for release but granting a bond hearing. Dkt. No. 11 at 1, 11. Relying on the six-factor test set forth

in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), Judge Fricke determined that Hong's "mandatory detention has become unreasonable and thus he is entitled to a bond hearing." Dkt. No. 11 at 6. Respondents timely objected, mounting a three-pronged assault on her recommendation. Dkt. No. 12. Respondents first contended that Judge Fricke erred in applying *Banda*'s six-factor test instead of applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Dkt. No. 12 at 2–3. Second, Respondents argued that even if the *Banda* test applied to Hong's claim, Judge Fricke "incorrectly concluded" that *Banda*'s first two factors—the total length of detention to date and the likely duration of future detention—weigh in favor of a bond hearing. *Id.* at 3–4; *see Banda*, 385 F. Supp. 3d at 1106. Respondents last challenged Judge Fricke's determination that, at a bond hearing, they bear the burden of justifying Hong's continued detention by clear and convincing evidence. Dkt. No. 12 at 5.

In April 2021, before the Court could adopt or reject Judge Fricke's Report and Recommendation, the BIA affirmed the IJ's denial of asylum, withholding of removal, and protection under the Convention Against Torture. Dkt. No. 15-1 at 4, 8. Much like the IJ, the BIA found evidence indicating that Hong "commanded his employees to commit an act of industrial sabotage in 2017 by ordering them to destroy [a] rival company's pipeline." *Id.* at 5. According to the BIA, the evidence further suggests that "the Chinese Government planned to arrest [Hong] in 2019 and prosecute him for these corrupt actions." *Id.* And while there are "two plausible, competing views of the evidence in this case—one that is favorable and one that is unfavorable" to Hong, the BIA could not "conclude that the Immigration Judge's choice between those two competing versions of facts is wrong." *Id.* at 7. Hong timely appealed this decision to the Ninth Circuit, which issued a temporary stay of removal. Dkt. No. 16, 19; *Hong v. Garland*, No. 21-71010, Dkt. No. 10 (9th Cir. May 25, 2021). This appeal remains pending.

1    The Court ordered the parties to submit a joint statement detailing the impact of the BIA's

2    decision on Hong's habeas claim and Judge Fricke's Report and Recommendation. *See* Dkt. Nos.

3    17–18. Judge Fricke reviewed the parties' joint statement and, in June 2021, issued an Amended

4    Report and Recommendation. Dkt. No. 20. Judge Fricke again recommended denying Hong's

5    request for release but granting a bond hearing. *Id.* at 6–7, 11. And again, Respondents took issue

6    with her reliance on the *Banda* factors instead of the *Mathews* test. Dkt. No. 21 at 2–3. They

7    likewise challenged Judge Fricke's resolution of the first and second *Banda* factors. *Id.* at 3–4.

8    Respondents' third and final objection is to their burden of proof at a bond hearing. *Id.* at 5. The

9    Court addresses these three objections below.

10                              **II.    DISCUSSION**

11    The Court "shall make a de novo determination of those portions of the report or specified

12    proposed findings or recommendations to which objection is made," and "may accept, reject, or

13    modify, in whole or in part, the recommendations made by the magistrate judge." 28 U.S.C. §

14    636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the

15    magistrate judge's disposition that has been properly objected to."). As the statute and rule suggest,

16    the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United*

17    *States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis original) ("Neither

18    the Constitution nor the statute requires a district judge to review, de novo, findings and

19    recommendations that the parties themselves accept as correct.").

20    **A.  Hong's Detention Under 8 U.S.C. § 1225(b)(1)**

21    Respondents have detained Hong for over two and a half years. They have done so pursuant

22    to 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that where, as here, an asylum officer determines

23    during an interview "that an alien has a credible fear of persecution . . . , the alien shall be detained

24    for further consideration of the application for asylum." This statute "mandate[s] detention" of an

asylum seeker "throughout the completion of applicable proceedings[.]" *Jennings v. Rodriguez*, 138 S. Ct. 830, 845 (2018). In the meantime, and as particularly relevant here, the statute says nothing "whatsoever about bond hearings." *Id.* at 842.

But the fact that Hong is not *statutorily* entitled to a bond hearing does not resolve his habeas claim. Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), such detention must still comport with due process. *See Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950 (9th Cir. 2008) ("Even where detention is permissible . . . due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))).

And district courts around the country have agreed that mandatory detention pending completion of removal proceedings "without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (quoting *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *8 (S.D.N.Y. May 23, 2018)); *see, e.g.*, *Thompson v. Horton*, No. C19-120-AKK-HNJ, 2019 WL 4793170, at *5 n.7 (N.D. Ala. Aug. 26, 2019) (collecting cases decided after *Jennings* that consider as-applied due process challenges to prolonged detention under §§ 1225(b) and 1226(c)); *Rogers v. Ripa*, No. C21-24433-JLK, 2022 WL 708493, at *4–5 (S.D. Fla. Jan. 22, 2022), *report and recommendation adopted*, No. 1:21-CV-24433-JLK, 2022 WL 574389 (S.D. Fla. Feb. 25, 2022); *Leke v. Hott*, 521 F. Supp. 3d 597, 604–05 (E.D. Va. 2021); *Romero Romero v. Wolf*, No. C20-08031-TSH, 2021 WL 254435, at *3 (N.D. Cal. Jan. 26, 2021).

**B.  The Appropriate Test: *Banda* or *Mathews*?**

Against this backdrop, the Court turns to the subject of Respondents' first objection: the correct test for determining when prolonged detention violates due process.[2] *See* Dkt. No. 21 at 2–3. Respondents cling to their belief that *Mathews*' three-part balancing test provides the correct analysis for assessing Hong's due process claim. *Id.* at 2.

As Respondents acknowledge, Dkt. No. 21 at 3, the Supreme Court's caveat in *Mathews* states that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands," 424 U.S. at 334 (cleaned up). The Court rejects Respondents' inference that the test developed in *Mathews* to address deprivation of monetary benefits is adequate to address the deprivation at issue here: prolonged detention without a bond hearing. *See Santosky v. Kramer*, 455 U.S. 745, 755–56 (1982) (due process requires a different level of protection for cases involving "significant deprivation of liberty" compared to cases involving "mere loss of money"). Courts employ the *Mathews* test "to resolve the question of 'whether the administrative procedures provided . . . are constitutionally sufficient'" and to "balanc[e] the benefits or burdens of 'additional or substitute procedural safeguards.'" *Banda*, 385 F. Supp. 3d at 1106 (quoting *Mathews*, 424 U.S. at 334–35). But a balancing test focusing on "*additional or substitute procedural safeguards . . . does not resolve the more fundamental issue of whether any* procedure—such as a bond hearing—must be provided." *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 917, 920 (W.D. Wash. 2020) (emphasis original) (cleaned up). Therefore, the factors articulated in *Mathews* are not appropriate in this context. *See Cruz v. Decker*, No. C18-9948-GBD-OTW, 2019 WL 7572975, at *5 (S.D.N.Y. Aug. 27, 2019) (finding that factors similar to the *Banda* factors

---

[2] Although Respondents do not concede that Hong has a due process right, Dkt. No. 21 at 3, their arguments presume it, *see generally* Dkt. No. 21. Respondents cabin their objections to the *Banda*-versus-*Mathews* issue, resolution of the first and second *Banda* factors, and their burden of proof at a future bond hearing.

were appropriate to address due process concerns arising from prolonged detention, and noting that the deprivation of monetary benefits at issue in *Mathews* does not "rise[ ] to the same level of deprivation as prolonged detention without a bond hearing"), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019).

Respondents' continued disagreement with this analysis does not provide sufficient grounds for the Court to revisit the issue in further detail. *See Juarez v. Wolf*, No. C20-1660-RJB-MLP, 2021 WL 2322823, at *1 (W.D. Wash. June 7, 2021) ("The government's objections regarding whether Hong has a right to a bond hearing in these circumstances are a repetition of its prior assertions and are addressed in the Report and Recommendation."); *Reyes v. Wolf*, C20-0377-JLR, 2020 WL 6820822, at *2 (W.D. Wash. Nov. 20, 2020) (same). The Court accordingly declines to flout intra-district authority, which favors a multi-factor analysis over the *Mathews* balancing test. *See, e.g.*, *Leaupepetele v. ICE Field Off. Dir.*, No. C21-961-RJB-DWC, 2021 WL 5450790, at *4 (W.D. Wash. Nov. 4, 2021); *Incze v. ICE Field Off. Dir.*, No. C21-74-JLR-DWC, 2021 WL 3038806, at *3–4 (W.D. Wash. June 30, 2021).[3]

Even under the *Mathews* test, the Court finds that Hong is entitled to a bond hearing. *See Mitka v. ICE Field Off. Dir.*, No. C19-193-MJP, 2019 WL 5892025, at *2–3 (W.D. Wash. Nov. 12, 2019) (conducting *Mathews* analysis without deciding which test applies). *Mathews* requires the Court to balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the

---

[3] Courts in this district have utilized an eight-factor test when addressing whether prolonged detention under section 1226(c) without a bond hearing violates due process. *See Martinez*, 2019 WL 5968089 at *9. Although this case implicates section 1225(b)(1), *Banda*'s six factors are derived directly from *Martinez*. And the analysis under each factor is the same regardless of whether it is in the context of the six-factor *Banda* test or all eight *Martinez* factors. The upshot is that courts have rejected the *Mathews* test in favor of a multi-factor approach.

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

As for the first factor, Hong's interest "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[T]he private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))). Respondents suggest that this interest is reduced because Hong's detention "is not indefinite." Dkt. No. 21 at 3. But when detention becomes prolonged, the private interest affected by the official action "is more substantial" and "greater procedural safeguards are therefore required." *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011). Moreover, a court in this district has already rejected Respondents' argument. *See Mitka*, 2019 WL 5892025, at *3. The Court rejects it here, too.

The second consideration in the *Mathews* calculus is just as concerning. The risk of erroneously depriving noncitizens of their fundamental right to be free from detention under the current procedures—or lack thereof—is obvious and well-documented. *See Hamdi*, 542 U.S. at 530 ("[H]istory and common sense teach us that an unchecked system of detention carries the potential to become a means for oppression and abuse[.]"). This case attests to that risk. And it illustrates the immense benefit to be gleaned—protection against arbitrary and prolonged detention during removal proceedings—in exchange for the minimal fiscal and administrative burden of a bond hearing. Hong has now languished in an ICE detention facility for two and half years. Not once has a neutral arbiter evaluated the need for his continued detention, *i.e.*, whether he poses a threat to the community or presents a flight risk. "[A]s the period of confinement grows, so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 853 (2d Cir. 2020).

1    Nor does Respondents' interest in "securing Petitioner's presence for removal" offset the

2  first two *Mathews* factors. Dkt. No. 21 at 3. Although they suggest that their interest is

3  "heightened" because Hong "has an outstanding INTERPOL Red Notice," *id.*, such assertions are

4  "appropriately heard during a bond hearing." *Mitka*, 2019 WL 5892025, at *3; *see Calderon-*

5  *Rodriguez v. Wilcox*, 374 F. Supp. 3d 1024, 1032 (W.D. Wash. 2019) ("[D]ue process requires the

6  government to show by clear and convincing evidence that the detainee presents a flight risk or a

7  danger to the community at the time of the bond hearing."). Sensing this, Respondents attempt to

8  bolster their side of the *Mathews* scale with two unpersuasive arguments. The Court need not dwell

9  on these for long.

10    Respondents first contend that Hong "received process" when he unsuccessfully moved

11  for a bond hearing and failed to appeal the IJ's denial on the basis that the IJ lacked jurisdiction.

12  Dkt. No. 21 at 3; Dkt. No. 5-8. Though Respondents cite to no authority in support of this

13  argument, it appears that they are relying on the premise that Hong received full process under the

14  applicable statute and regulations. But the dispositive inquiry is whether the Due Process Clause

15  entitles him to more than what Congress has already prescribed. *See also Phan v. Reno*, 56 F. Supp.

16  2d 1149, 1153 (W.D. Wash. 1999); *Tam v. I.N.S.*, 14 F. Supp. 2d 1184, 1189 (E.D. Cal. 1998).

17    Respondents' final argument is likewise unavailing. They assert that Hong received a

18  custody redetermination "since the filing of his habeas petition." Dkt. No. 21 at 3. This ignores

19  Ninth Circuit precedent, which holds that custody redeterminations are insufficient substitutes for

20  the procedural protections of a bond hearing. *See, e.g.*, *Casas-Castrillon*, 535 F.3d at 951–52;

21  *Diouf*, 643 F.3d at 1090–92.

22    Hong is therefore entitled to a bond hearing even under the three-part *Mathews* test.

23

24

1

### C.  First and Second *Banda* Factors

2       Having overruled Respondents' first objection, the Court turns to their second: whether

3   Judge Fricke erred in resolving the first and second *Banda* factors in favor of Hong. Dkt. No. 21

4   at 3–4. Under *Banda*, a court evaluates: (1) the total length of detention to date; (2) the likely

5   duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings

6   caused by the detainee; (5) delays in the removal proceedings caused by the Government; and

7   (6) the likelihood that the removal proceedings will result in a final order of removal. 385 F. Supp.

8   3d at 1106. Here, Magistrate Judge Fricke found that "at least" four of these six factors—including

9   the first two—weigh in favor of granting a bond hearing, while two are "neutral." Dkt. No. 20 at

10   11. Put differently, none of the factors weigh in Respondents' favor.

11           1.  <u>Total Length of Detention to Date</u>

12       Judge Fricke correctly resolved the first and "most important" factor in Hong's favor.

13   *Martinez*, 2019 WL 5968089, at *9. At the time of the Amended Report and Recommendation,

14   Respondents had detained Hong for over 21 months. Dkt. No. 20 at 7. This factor "strongly

15   favor[ed]" Hong then and it weighs even more in his favor now, as his detention will soon exceed

16   30 months. *See Leaupepetele*, 2021 WL 5450790, at *4 (petitioner's 32-month detention weighed

17   "strongly" in favor of granting a bond hearing); *Reyes*, 2020 WL 6820822, at *4 (28-month

18   detention); *Alejandro-Bernabe v. Barr*, C20-1463-RSM-BAT, 2021 WL 247871, at *3 (W.D.

19   Wash. Jan. 4, 2021) (22-month detention); *Djelassi*, 434 F. Supp. 3d at 922 (20-month detention);

20   *Katlong v. Barr*, C20-0846-RSL-MAT, 2020 WL 7048530, at *3 (W.D. Wash. Oct. 30, 2020) (18-

21   month detention); *Martinez*, 2019 WL 5968089, at *9 (13-month detention).

22       Respondents seek to avoid this straightforward outcome. They rely on *Prieto-Romero v.

23   Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (more than three years of detention) and *Casas-

24   Castrillon*, 535 F.3d at 944 (seven years in detention) to suggest that Hong's detention to date has

1    not become unreasonably lengthy. But these cases do not help Respondents. The petitioner in

2    *Prieto-Romero* received three bond hearings during his removal proceedings. 534 F.3d at 1065.

3    Moreover, that case turned on whether the government had the statutory authority under section

4    1226(a) to continue to detain a noncitizen after his removal order was administratively final. *Id.* at

5    1057–1065. *See Zadvydas*, 533 U.S. at 690–700. In contrast, and as noted above, Respondents'

6    statutory authority to detain Hong without a bond hearing is not in dispute. *See Jennings*, 138 S.

7    Ct. at 842, 845. The issue is whether the Due Process Clause compels Respondents to provide a

8    bond hearing even though section 1225(b)(1) does not. *See Prieto-Romero*, 534 F.3d at 1065

9    ("There is an important difference between whether detention is statutorily authorized and whether

10   it has been adequately determined to be necessary as to any particular person.").

11        Respondents likewise misread *Casas-Castrillon*. That case addressed whether the

12   Government, under sections 1226(a) and 1226(c), could continue to detain "legal permanent

13   residents . . . , who have been subjected to prolonged detention pending judicial review of their

14   final order of removal" without a bond hearing. 535 F.3d at 950. But contrary to Respondents'

15   suggestion, Dkt. No. 21 at 4, the Ninth Circuit "conclude[d] that prolonged detention without

16   adequate procedural protections would raise serious constitutional concerns." *Casas-Castrillon*,

17   535 F.3d at 950. And the court ultimately avoided the very question at issue in Hong's case: "[w]e

18   need not resolve this constitutional question, however, because we find no evidence that Congress

19   intended to authorize the long-term detention of aliens such as Casas without providing them

20   access to a bond hearing before an immigration judge." *Id.* Relying on the doctrine of constitutional

21   avoidance, the court instead read into section 1226(a) a requirement that the Government provide

22   a detained noncitizen with a bond hearing. *Id.* at 951. As particularly noteworthy here, the court

23   found the record insufficient to ascertain whether the petitioner "ha[d] been afforded an adequate

24   opportunity to challenge the necessity of his detention" and remanded the case to the district court

1    with instructions to grant petitioner's habeas petition unless the Government provided a bond

2    hearing or proved that he had already received one. *Id.* at 951–52; *see also Diouf*, 634 F.3d at 1086.

3        Although *Jennings* reversed the Ninth Circuit's misapplication of the constitutional

4    avoidance doctrine to "construe" the immigration statutes as "contain[ing] implicit limitations on

5    the length of detention[,]" 138 S. Ct. at 842–44, *Casas-Castrillon* certainly does not stand for the

6    proposition that prolonged detention without a bond hearing is per se constitutional. As the Ninth

7    Circuit observed in *Prieto-Romero*, a detention of over 36 months "certainly qualifies as prolonged

8    by any measure," *id.* at 1062, and it should come as no surprise that Hong's 30-month detention

9    weighs in his favor. Judge Fricke properly resolved the first *Banda* factor in favor of Hong and a

10   bond hearing.

11           2.    The Likely Duration of Future Detention

12       The Court reaches the same conclusion with respect to *Banda*'s second factor. Here the

13   relevant consideration is "how long the detention is likely to continue absent judicial intervention;

14   in other words, the anticipated duration of all removal proceedings including administrative *and*

15   *judicial appeals*." *Martinez*, 2019 WL 5968089, at *9 (emphasis added). Judge Fricke properly

16   rejected Respondents' contention that this factor should weigh against a bond hearing just because

17   administrative review is now complete. Dkt. No. 20 at 7–8.

18       As Judge Fricke noted, appeals pend in the Ninth Circuit for 12 to 20 months before oral

19   argument, and then an additional three months to a year after oral argument before a decision is

20   issued. *Id.* at 7; *see also Alejandro-Bernabe*, 2021 WL 247871, at *3 (relying on this same timeline

21   from Ninth Circuit website); *Katlong*, 2020 WL 7048530, at *3 (same); *Martinez*, 2019 WL

22   5968089, at *9 (same). At the time of the Amended Report and Recommendation, Judge Fricke

23   estimated that Hong could remain in custody for an additional 15 to 38 months. Dkt. No. 20 at 8.

24   The Ninth Circuit has now scheduled oral argument in Hong's appeal for June 9, 2022, *Hong v.*

*Garland*, No. 21-71010, Dkt. No. 38 (9th Cir. March 27, 2022), so he could remain in custody for an additional five to 14 months from the date of this Order. Therefore, the second factor weighs at least slightly in Hong's favor. *See Leaupepetele*, 2021 WL 5450790, at *5 (second factor weighed "slightly" in petitioner's favor because his case "might be decided quickly, but it is also possible the Ninth Circuit will not decide his case for another year"); *Mitka*, 2019 WL 5892025, at *4 (finding that second factor "d[id] not weigh against" petitioner because there "was no information before the Court" regarding the time it would take the Ninth Circuit to adjudicate his petition for review).

In sum, four factors—including the most important one—favor Hong; two are neutral; and none weigh in favor of Respondents. *See Mitka*, 2019 WL 5892025, at *4 (concluding that the Government's objections did "not change the outcome under *Banda*, especially in light of the weight owed to the first factor"). Hong is entitled to a bond hearing.

### D.  The Government's Burden of Proof at the Bond Hearing

Respondents' final objection is to their burden of proof at the bond hearing. They argue that "[a]n alien detained under § 1225(b) may be released only through discretionary parole under 8 U.S.C. § 1182(d)(5)," and "the burden may be placed on the alien to show that he will appear at all hearings and/or depart the United States when required." Dkt. No. 21 at 5 (citing 8 C.F.R. § 212.5(d)). This again misses the mark. The dispositive inquiry is whether the Due Process Clause compels a non-statutory avenue of release—here, a bond hearing—for noncitizens subjected to prolonged detention pursuant to section 1225(b)(1). And courts have repeatedly reaffirmed that, at a bond hearing, the government bears the burden of justifying continued detention by clear and convincing evidence. *See, e.g.*, *Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020); *Djelassi*, 434 F. Supp. 3d at 925, 929; *Calderon-Rodriguez*, 374 F. Supp. 3d at 1032 & n.8; *Masood v. Barr*, No. C19-07623-JD, 2020 WL 95633, at *5 (N.D. Cal. Jan. 8, 2020); *Lett v. Decker*, 346

F. Supp. 3d 379, 389 (S.D.N.Y. 2018). Judge Fricke correctly concluded that the government bears the burden of proving by clear and convincing evidence that Hong's continued detention is justified.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The Court ADOPTS Judge Fricke's Amended Report and Recommendation (Dkt. No. 20);

(2) The Court GRANTS IN PART and DENIES IN PART Respondents' Motion to Dismiss (Dkt. No. 4);

(3) The Court GRANTS IN PART and DENIES IN PART Hong's habeas corpus petition (Dkt. No. 1);

(4) Petitioner's request for release is DENIED; and

(5) Petitioner's request for a bond hearing is GRANTED. Within 30 days of the filing date of this Order, Respondents must provide Hong with a bond hearing that complies with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(6) The Clerk is directed to send copies of this Order to Petitioner, to Magistrate Judge Theresa L. Fricke, and to any other party that has appeared in this action.

Dated this 11th day of April, 2022.

Lauren King
United States District Judge